UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KELLY ZUBERT,

                            Plaintiff,                DECISION AND ORDER
-vs-
                                                       17-CV-6791-CJS
NANCY A. BERRYHILL,[1]

                            Defendant.

---

## APPEARANCES

For Plaintiff:                              Timothy Hiller, Esq.
                                          Kenneth R. Hiller, Esq.
                                          Law Offices of Kenneth Hiller
                                          6000 N. Bailey Ave., Suite 1A
                                          Amherst, NY 14226
                                          (716) 564-3288

For Defendant:                            Francis D. Tankard, Esq.
                                          Joletta Marie Friesen, Esq.
                                          Office of the General Counsel
                                          Social Security Administration
                                          601 E. 12th St., Room 965
                                          Kansas City, MO 64106

                                          Heetano Shamsoondar, Esq.
                                          Office of General Counsel

---

[1] "On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. On March 6, 2018, the Government Accountability Office stated that, as of November 17, 2017, Ms. Berryhill's status violated the Federal Vacancies Reform Act, which limits the time a position can be filled by an acting official and '[t]herefore Ms. Berryhill was not authorized to continue serving using the title of Acting Commissioner…' Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1988 Commissioner, Social Security Administration. Government Accountability Office. March 6, 2018. However, Ms. Berryhill continues to functionally lead the Social Security Administration from her position of record as Deputy Commissioner of Operations. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin, Acting Commissioner of Social Security, as the defendant in this suit." *Antal v. Berryhill*, No. CV 3:17-2097, 2018 WL 4030694, at *1 (M.D. Pa. Aug. 23, 2018)

26 Federal Plaza, Room 3904
New York, NY 10278
(212) 264-2426

Kathryn L. Smith, A.U.S.A.
United States Attorney's Office
100 State Street, Fifth Floor
Rochester, NY 14614
(585) 263-6760

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant"), which denied the application of Kelly Zubert ("Plaintiff") for disability benefits. Now before the Court is Plaintiff's motion for judgment on the pleadings, filed on June 8, 2018, ECF No. 7, and the Commissioner's cross-motion for judgment on the pleadings filed on August 3, 2018, ECF No. 11. The Court denies Plaintiff's motion to reverse and remand the Commissioner's decision pursuant to the fourth sentence of 42 U.S.C. § 405(g) and grants the Commissioner's motion to affirm.

## BACKGROUND

Plaintiff filed her application on July 26, 2013, for Title II disability insurance benefits alleging a disability beginning July 25, 2013, subsequently amended to April 23, 2012. R. 40.

The Commissioner denied her claim initially on May 21, 2014, and at her request, Plaintiff appeared before an Administrative Law Judge ("ALJ") in Rochester, New York, on July 15, 2016. Attorneys Thomas J. Giodano, Jr., Esq., and Attorney Lamitty[2] represented Plaintiff. R. 40.

---

[2] Neither the transcript of the hearing, nor the ALJ's decision identify the first name of Attorney Lamitty. Additionally, his name is spelled Lamitty in the transcript, and Lamitie in the ALJ's decision. R. 40, 60.

The ALJ issued a 14-page decision dated August 10, 2016, finding that Plaintiff was capable of medium work and was, therefore, not disabled. R. 40–53. The Appeals Council denied Plaintiff's appeal on September 18, 2017, making the ALJ's decision the final decision of the Commissioner. R. 1. Plaintiff filed suit on November 16, 2017, ECF No. 1, and the Court heard oral argument on April 3, 2019.

## STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 149 (1997).

When determining whether substantial evidence supports the Commissioner's findings, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curium)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings are supported by substantial evidence in the record,

and whether the Commissioner's conclusions are based upon an erroneous legal standard. *Green-Younger v. Barnhart*, 335 F.3d 99, 105–06 (2d Cir. 2003); *see also Mongeur*, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case *de novo* ).

Under Federal Rule of Civil Procedure 12(c), the Court may grant judgment on the pleadings where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). The certified copy of the transcript of the record, including the evidence upon which the ALJ relied, is part of the pleadings. 42 U.S.C. § 405(g).

## DISCUSSION

### Medical Evidence

In her first assignment of error, Plaintiff contends that the ALJ did not properly apply the treating physician rule and erroneously discounted the opinion of Marc Lavender, M.D., her treating physician, concerning his diagnosis of fibromyalgia. Further, she contends the ALJ erred by failing to explain how he concluded Plaintiff has the residual functional capacity to perform medium work. The Commissioner maintains the ALJ properly weighed the medical evidence and that substantial evidence supports her decision.

Jeanne C. Beddoe, M.D., examined Plaintiff on February 5, 2013, and diagnosed fibromyalgia, chronic back pain, IT band syndrome, and muscle spasm. R. 324. Dr. Beddoe noted that Plaintiff's chronic pain and fibromyalgia improved on Cymbalta, refilled her Oxycodone prescription, and recommend stretching for the IT band syndrome. R. 324.

Mark Lavender, M.D. ("Dr. Lavender") saw Plaintiff for worsening fibromyalgia pain on November 6, 2014. R. 1001. A trigger examination showed only two out of a possible eighteen trigger points, or tender points as the Social Security Administration refers to them. R. 1002.

4

Social Security Policy Interpretation Ruling 12-2p on the evaluation of fibromyalgia provides the following guidance:

> A. The 1990 ACR[3] Criteria for the Classification of Fibromyalgia. Based on these criteria, we may find that a person has an MDI of FM if he or she has all three of the following:
>
> 1. A history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months. The pain may fluctuate in intensity and may not always be present.
>
> 2. At least 11 positive tender points on physical examination (see diagram below). The positive tender points must be found bilaterally (on the left and right sides of the body) and both above and below the waist.
>
> a. The 18 tender point sites are located on each side of the body at the:
>
> Occiput (base of the skull);
>
> Low cervical spine (back and side of the neck); Trapezius muscle (shoulder);
>
> Supraspinatus muscle (near the shoulder blade); Second rib (top of the rib cage near the sternum or breast bone);
>
> Lateral epicondyle (outer aspect of the elbow);
>
> Gluteal (top of the buttock);
>
> Greater trochanter (below the hip); and
>
> Inner aspect of the knee.

Dr. Lavender's follow-up examination on November 24, 2014, when Plaintiff visited so that he could fill out disability paperwork, showed again that only two of a possible eighteen trigger or tender points were present. R. 1000 ("occipital – Positive bilaterally…medial aspect of knee – positive bilaterally"). Dr. Lavender concluded that since "the pain of

---

[3] ACR is a reference to the 1990 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia, on which the Social Security Administration based its guidance. SSR 12-2p, II.

5

fibromyalgia is completely subjective, and thus extraordinarily difficult to measure or quantify in a reliable fashion on physical examination or through testing," he relied on "her description of her pain" and "the way in which it limits her ability to engage in day-to-day activities whether it be household chores, or employment proper." R. 1000.



*Figure 1 Tender Point diagram from SSR 12-2p.*

Subsequently, in a medical source statement dated April 27, 2016, R. 997-98, Dr. Lavender indicated that Plaintiff, due to fibromyalgia, mild lumbar and cervical degenerative disc disease, which caused chronic pain, was only able to sit two to four hours in an eight-hour workday, stand or walk for two hours, needed to alternate between sitting and standing every twenty minutes, could only occasionally lift less than ten pounds, and rarely 10 pounds, and never twenty pounds or more, and only occasionally push or pull using her upper or lower extremities. R. 997. Dr. Lavender further marked on the check-off form that Plaintiff would

frequently lose focus and concentration due to pain, would need unscheduled and walking breaks every thirty minutes for five minutes, and would likely be absent from work due to her impairments or treatment for four days or more per month. R. 998. To this report, Dr. Lavender attached notes from office visits on November 24, 2014, and November 6, 2014, approximately a year and a half before he completed the medical source statement. R. 999–1008.

In assessing Dr. Lavender's medical opinions, the ALJ wrote that she gave "very little weight" to his opinions, "because they are inconsistent with the balance of the overall evidence, including the claimant's good response to conservative treatment…." R. 50. The ALJ commented on the less than informative "checks" in boxes on the statement, and the doctor's restrictive findings concerning Plaintiff's residual functional capacity; she concluded that "these opinions significantly contradict the well-supported opinions of examining physician Dr. Wolf." R. 50. The ALJ also noted the contradiction between Dr. Lavender's conclusion that Plaintiff's pain would interfere with her focus and concentration and she would need frequent breaks, and "the well-supported opinions of psychologists Dr. Lin and Dr. Shapiro…." R. 50. She further observed in her decision that Dr. Lavender noted "that objective testing was generally unremarkable" and, further, "his opinions are at least partially based on the self-reporting of the claimant…." R. 50.

Progress notes from Sudipt S. Deshmukh, M.D., and dated December 17, 2015, at Rochester General Hospital, show that Plaintiff had spinal stenosis of the cervical region, chronic low back pain, and a positive drug screening test. R. 1031. Dr. Deshmukh referred her to physical medicine rehabilitation.

On January 16, 2016, Plaintiff was seen at the emergency room at Unity Hospital for mid-lower back pain. R. 888. A physical examination confirmed vertebral point tenderness at

7

T 12, and a thoracic spine x-ray showed: "Normal alignment, normal disc spaces, no fractures." R. 890. A venous duplex sonogram of Plaintiff's bilateral lower extremity was negative for deep vein thrombosis. R. 890. The hospital discharged Plaintiff on January 3, 2016, with instructions not to lift anything over ten pounds, to use heat, a topical analgesic rub, and Oxycodone if needed for pain. R. 891.

Plaintiff saw Ben Laplante, D.O., ("Dr. Laplante") at the Unity Spine Center on February 8, 2016, for neck pain. R. 983. She reported a duration of six years, with a severity level of nine out of ten. R. 985. She further reported prior physical therapy treatments in 2006 and 2013 for two sessions, and that she was not deemed a surgical candidate by Dr. Maxwell. R. 983. Upon physical examination, Dr. Laplante noted no abnormalities or posterior tenderness of her spine, and that she had an active painful range of motion over her cervical spine. R. 985. He prescribed analgesics, physical therapy, and recommended a magnetic resonance image if she continued to be in pain, after which he stated he would "likely continue to maximize conservative care to include acupuncture vs chiropractic." R. 986. Plaintiff received the same advice on April 13, 2016. R. 980–82.

On April 14, 2016, Plaintiff saw Clifford W. Meyers, M.D., at Unity Rehab and Neurology. R. 960. Dr. Meyers wrote the following in his report to Dr. Deshmukh:

> I evaluated your patient Kelly Zubert today.
>
> Kelly Zubert is a 45 year old woman with a history of chronic low back pain, polysubstance abuse (previously on cocaine. off *x* 2 years), depression/anxiety, insomnia and fibromyalgia. I suspected that these were chronic migraine (she meets all IHS criteria for this diagnosis based on symptoms and time), most likely with chronification in the setting of multiple precipitating causes including somatic pain, depression/anxiety, insomnia and medication overuse....
>
> I am going to trial botox. I do however think that the most potential for improvement of her pain conditions is going to come from work on lifestyle issues-depression, insomnia, neck pain. In addition, do have to wonder about the possibility of pain disorder as a driver for her multiple complaints. Drug-

seeking is possible—she is again cocaine positive on a recent (yesterday) study. R. 961–62. Keith Schroeder, M.D., reported that a magnetic resonance imaging of her cervical spine on April 17, 2016, revealed the following: "Degenerative spine disease most significant the right at C6-7. Comparison to previous study done one half years ago, the findings are not appreciably changed. If further imaging changes patient's management, a myelogram and post myelogram CT scan may be helpful." R. 994.

*Plaintiff's Assignments of Error*

Plaintiff, in her memorandum of law and reply, argues that the ALJ erred by failing to give a good explanation as to why Dr. Lavender's assessment was not given greater weight as required by the treating physician rule. Further, she contends the ALJ discounted Dr. Lavender's assessment because of the nature of fibromyalgia and the difficulty of obtaining objective evidence to support a diagnosis.

Second, Plaintiff challenges the ALJ's explanation that Plaintiff had the residual functional capacity to perform medium work with non-exertional limitations. The Commissioner's regulations define medium work as involving lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds and includes the ability to perform the exertional requirements of light and sedentary work. 20 C.F.R. § 404.1567(c). Plaintiff asserts that the ALJ failed to assess Plaintiff's capacity to perform relevant functions despite contradictory evidence in the record and that other inadequacies in her analysis frustrate meaningful review, citing *Cichocki v. Astrue*, 729 F.3d 172, 177–78 (2d Cir. 2013).

*Analysis*

The Court determines that the ALJ adequately explained why she discounted Dr. Lavender's medical assessment of Plaintiff's abilities. She pointed out that fibromyalgia is

difficult to assess objectively. The doctor's medical source statement does not indicate the severity of her symptoms and his medical treatment eighteen months earlier also gave no indication of the severity of her fibromyalgia. *See Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) ("mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability"). Just as importantly, Dr. Lavender relied almost exclusively on Plaintiff's subjective assessment of her abilities as the basis for his medical source statement and the data he relied on was almost eighteen months old and showed, *inter alia*, that she was able to clean her house daily and was "getting out of [her] house to take her son places." R. 1001. The other medical evidence in the Record supports the ALJ's conclusion that her physical ailments were not disabling.

Plaintiff also objects to the ALJ's reliance on the conservative treatment of Plaintiff's symptoms, arguing that fibromyalgia has no less conservative treatment options. The Court notes that even Dr. Lavender found only two trigger or tender points, and Dr. Wolf found none, thus supporting her conclusion that fibromyalgia was not disabling. Plaintiff also complained of neck and back pain, and there she received only conservative treatment, supporting the ALJ's conclusion that those symptoms, also, were not disabling.[4]

Turning to the ALJ's residual functional capacity determination, in *Cichocki*, 729 F.3d at 178, the Second Circuit found that the Commissioner had not included "an explicit function-by-function analysis of all possible limitations, but did address all relevant limitations," and as

---

[4] The Commissioner notes Plaintiff's fear of needles as the reason why she turned down injections to address her pain, but also notes that she had several tattoos, which does not support Plaintiff's contention that only fear of needles kept her from trying more aggressive pain management. R. 48 ("not fully compliant with recommendations for injections due to a reported fear of needles"); 311 ("she is very phobic of needles anywhere except in a vein, so canceled…appointment" for "steroid injection for her greater trochanteric bursitis"); 922 ("On inspection patient is a normal size female with multiple tattoos.")

a result, found that remand was not required. Plaintiff points out that the only specific evidence that could possibly support the ALJ's conclusion that Plaintiff could perform medium work was Dr. Wolf's opinion, finding she had no physical limitations at all. R. 404. In his consultative examination conducted on Mary 2, 2014, Aharon Wolf, M.D., diagnosed Plaintiff with fibromyalgia, chronic neck pain, and chronic back pain, but found no limitations. His musculoskeletal examination found full range of motion in Plaintiff's cervical spine, thoracic spine, eighty degrees of flexion in her lumbar spine, and full range of motion in her shoulders, elbows, forearms, wrists, hips, knees, and ankles. R. 403. Because the ALJ appropriately applied the treating physician rule to Dr. Lavender's assessment, she was free to evaluate the medical evidence and reject the strict constraints Dr. Lavender denoted in his check box medical statement form. After reviewing the Record, the Court finds that the ALJ's RFC is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion, ECF No. 7, to reverse the Commissioner's determination and grants the Commissioner's motion, ECF No. 11, to affirm the ALJ's determination that Plaintiff was not disabled.

DATED:   May 24, 2019
         Rochester, New York

                                    /s/ Charles J. Siragusa
                                    CHARLES J. SIRAGUSA
                                    United States District Judge